**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Lucky Inn LLC, | No. CV-23-08126-PCT-DLR |
| Plaintiff, | **ORDER** |
| v. | |
| Northfield Insurance Company, | |
| Defendant. | |

Before the Court is Defendant Northfield Insurance Company's ("Northfield") motion for summary judgment. (Doc. 73.) The motion is fully briefed.[1] (Docs. 74, 75.) For the following reasons, the Court grants in part and denies in part the motion.

**I.     Background**

Plaintiff Lucky Inn LLC ("Lucky Inn") owns a hotel ("Property") in Lake Havasu, Arizona for which it took out an insurance policy ("Policy") with Northfield. (Doc. 73-1 at 3.) In August 2022, the Property experienced storm damage ("Loss"). (Doc. 73-22 at 2–3.) Lucky Inn reported the Loss to Northfield, and Northfield accepted coverage for it, began its adjustment of the claim, and issued several advance and supplemental payments to or on behalf of Lucky Inn. (Doc. 73-5 at 2–9.)

Northfield determined that the replacement cost value ("RCV") of the Property at

---

[1] Oral argument is denied because the motions are adequately briefed, and oral argument will not help the Court resolve the issues presented. *See* Fed. R. Civ. P. 78(b); LRCiv. 7.2(f).

the time of the Loss was $771,392.30. (Doc. 73-4 at 2.) In accordance with the Policy, Northfield subtracted depreciation, a building ordinance or law coverage limit, and the insured's deductible from the RCV to determine the total loss payable: $682,377.95. (*Id.*) Northfield also accepted coverage of Lucky Inn's lost business income and business personal property ("BPP") related to the Loss. (*Id.*) According to its statement of loss, it valued the payable BPP losses at $3,636.48 and the payable business income losses at $115,996. (*Id.*) It issued several coverage checks: one dated August 24, 2022 for $28,484.16, one dated September 23, 2022 for $50,000, one dated October 14, 2022 for $150,000, one dated October 19, 2022 for 62,038.83, one dated October 26, 2022 for $120,800.11, one dated November 30, 2022 for $140,615.62, and one dated August 7, 2024 for $266,743.15. (Doc. 73-5 at 2–9.)

In November 2022, Ola Ghanem, one of Lucky Inn's members, notified Northfield that another member (and Ghanem's ex-husband), Abdelaziz Hassam Abdelaziz, received two of the checks Northfield issued (specifically, the October 14 and October 26 checks) and misappropriated them. (Doc. 73-8 at 2–3.) A representative at Northfield then provided Ghanem forged endorsement affidavits to complete to dispute the check deposits with the bank and discussed with Ghanem how further payment should be made. (Docs. 73-9 at 2–6; 73-11 at 2–11.) Ghanem instructed Northfield not to issue any further checks "for the time being" and requested "wire transfers from now on." (Doc. 73-8 at 2.) At the end of November, Northfield instead issued another check to Lucky Inn. (Doc. 73-5 at 6.) Ghanem tried on multiple occasions to complete the forged endorsement affidavits but failed to properly execute them. (Doc. 73-10 at 2–16.)

After another email exchange with a representative wherein Ghanem provided some information for Northfield to provide payment via wire transfer, Northfield became suspicious of potential fraud. (Doc. 73-12 at 2–13.) Consequently, it stopped making payments, and counsel for Northfield sent letters to both Ghanem and Abdelaziz requesting that they sit for examinations under oath ("EUO"), provide certain documents, and allow for reinspection of the Property pursuant to the Policy. (Doc. 73-2 at 2–13.) Neither

1  Ghanem nor Abdelaziz made themselves available for EUOs or facilitated reinspection of
2  the property. (Doc. 73-23 at 3.) Ghanem retained an attorney who provided Northfield with
3  some, but not all, of the requested documents. (Doc. 74-11 at 2–5.) Abdelaziz's assistant
4  responded via email stating that Abdelaziz would try to cooperate and make himself
5  available. (Doc. 73-13 at 2–4.) Northfield sent two more letters, to Ghanem and Abdelaziz
6  respectively, again requesting that they sit for EUOs, provide other documents, and allow
7  for reinspection of the Property. (Doc. 73-2 at 14–22.) Neither responded to these letters.

8  Several days later, Lucky Inn filed the present suit, alleging Northfield breached the
9  contract and breached its implied duty of good faith and fair dealing. (Doc. 1-3 at 2–11.)
10 Northfield now moves for summary judgment. (Doc. 73.)

11 **II.     Legal Standard**

12 Summary judgment is appropriate when there is no genuine dispute as to any
13 material fact and, viewing those facts in a light most favorable to the non-moving party,
14 the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A fact is
15 material if it might affect the outcome of the case, and a dispute is genuine if a reasonable
16 jury could find for the nonmoving party based on the competing evidence. *Anderson v.*
17 *Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment may also be entered
18 "against a party who fails to make a showing sufficient to establish the existence of an
19 element essential to that party's case, and on which that party will bear the burden of proof
20 at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

21 The party seeking summary judgment "bears the initial responsibility of informing
22 the district court of the basis for its motion, and identifying those portions of [the record]
23 which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323
24 (quotation omitted). The burden then shifts to the non-movant to establish the existence of
25 a genuine and material factual dispute. *Id.* at 324. The non-movant "must do more than
26 simply show that there is some metaphysical doubt as to the material facts"; it must "come
27 forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita*
28 *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ.

P. 56(e)).

### III. Analysis

Northfield argues that Lucky Inn either breached the contract itself or failed to perform a condition precedent to coverage, relieving it of its duty to perform. (Doc. 73 at 9–10.) It alternatively seeks summary judgment on the basis that Lucky Inn fails to raise a genuine dispute of material fact on either of its claims. (*Id.* at 11, 15.) The Court addresses each of Northfield's arguments in turn.[2]

#### a. There are genuine disputes of fact as to whether Lucky Inn breached the contract or failed to perform a condition precedent and whether Northfield was substantially prejudiced thereby.

Northfield asserts that Ghanem's and Abdelaziz's failure to sit for EUOs and failure to allow for reinspection of the Property constitute either a breach of the Policy or a failure to perform a condition precedent. (Doc. 73 at 10–11.) Virtually the same law applies in either scenario, so the Court will analyze the two arguments together.

An insured's breach of the insurance policy, including breach of a cooperation clause, may constitute a valid defense to an action on the policy, but only if the breach is "material, violating a provision reasonably necessary for the protection of the insurer, and it . . . substantially prejudice[d] the insurer." *Holt v. Utica Mut. Ins. Co.*, 759 P.2d 623, 627 (Ariz. 1988). "In Arizona, . . . whether an insurer has suffered substantial prejudice as the result of a breach . . . is generally a factual question. It is the insurer's burden to show actual prejudice before it can avoid liability under the insurance policy." *Id.* at 630.

"Arizona courts disfavor 'construing conditional provisions in a contract' as conditions precedent and will not do so 'unless such construction is plainly and

---

[2] Northfield also argues that it is entitled to summary judgment because Lucky Inn is a foreign limited liability company ("LLC") not registered to do business in Arizona. (Doc. 73 at 4.) The Court confirmed that Lucky Inn was not registered as a foreign LLC and therefore was statutorily prohibited from maintaining suit here. A.R.S. § 29-3902(A)–(B). The Court thus ordered Lucky Inn to register with the Arizona Corporation Commission as a foreign LLC or risk having its case dismissed. (Doc. 78.) Lucky Inn complied with the order and filed documentation of its registration with the Court. (Doc. 79.) For the reasons discussed in that order, the Court will not consider Lucky Inn's previous failure to register as grounds for summary judgment.

unambiguously required by the language of the contract.'" *Trudel v. Am. Fam. Mut. Ins. Co.*, No. CV-12-1208-PHX-SMM, 2014 WL 4053405, at *4 (D. Ariz. Aug. 15, 2014) (first quoting *Angle v. Marco Builders, Inc.*, 626 P.2d 126, 129 (Ariz. 1981); then quoting *Realty Assocs. of Sedona v. Valley Nat'l Bank of Ariz.*, 738 P.2d 1121, 1127 (Ariz. Ct. App. 1986)). Even where a provision is unambiguously a condition precedent, the insurer is not relieved of its liability because of the non-occurrence of the condition "unless it can show it has been prejudiced thereby." *Id.* (quoting *Lindus v. N. Ins. Co. of N.Y.*, 438 P.2d 311, 315 (Ariz. 1968)); *see Zuckerman v. Transamerica Ins. Co.*, 650 P.2d 441, 445–48 (Ariz. 1982) (acknowledging "cooperation clauses" are adhesive clauses in insurance contracts and will not "result in forfeiture of rights arising thereunder unless the insurer establishes prejudice").

"[T]he law is well settled that a failure or refusal of the insured to comply with his obligation of cooperation under [an EUO] provision will constitute a bar to any recovery against the insurance company" if the insurer was substantially prejudiced. *Christie's Cabaret of Glendale LLC v. United Nat'l Ins. Co.*, 562 F. Supp. 3d 106, 119 (D. Ariz. 2021) (quoting *Warrilow v. Super. Ct. in & for Pima Cnty*, 689 P.2d 193, 196 (Ariz. Ct. App. 1984) (alterations in original)). In *Christie's Cabaret*, the court denied summary judgment against the insured where the insurer claimed the insured breached the EUO provision, finding genuine disputes about whether the insurer invoked the provision and whether it was substantially prejudiced. *Id.* at 119–20. The court found that the insurer's request for an EUO was conditional, and the parties both took a long time to respond to one another during the investigation. *Id.* The insurer's "letter did not establish a time date, or location for an EUO. Nor did it request [the insured's] counsel do so." *Id.* at 119. If the insurer "genuinely believed that a EUO was necessary to clarify its coverage obligations, it should have been more diligent in pursuing its request." *Id.* at 120. Even if the insurer had shown a breach, it had yet to demonstrate substantial prejudice. *Id.*

The Policy here includes a similar standard provision requiring Lucky Inn to facilitate reinspection of the Property and to sit for EUOs upon request. (Doc. 73-1 at 20.)

1  Though Northfield's letters requesting EUOs and documents provide more detail than the
2  letter in *Christie's Cabaret*, they similarly do not include a date or time, only noting that
3  the EUO will be scheduled *after* the requested documents are produced. (Doc. 73-2 at 7.)
4  Neither Ghanem nor Abdelaziz produced all the requested documents, and no EUOs were
5  scheduled. (*Id.* at 20–21.) Northfield's second set of letters shows that it intended to take
6  EUOs imminently, but that does not necessitate the conclusion that Lucky Inn refused to
7  comply with the Policy. (*See* Doc. 73-2 at 21.)

Regardless, Northfield still must demonstrate substantial prejudice. Northfield
never actually *made* double payment to Lucky Inn (which was its claimed concern (Doc.75
at 7)), and it has since had the opportunity to take depositions. Because substantial
prejudice is an intensely factual question, summary judgment on this basis is inappropriate.

### b. Lucky Inn raises genuine disputes of material fact as to whether Northfield owed it more coverage for its business income and BPP losses.

Lucky Inn claims that Northfield breached the Policy by refusing to make various
coverage payments it believes it is owed. To survive summary judgment on its breach of
contract claim, Lucky Inn must present evidence of: (1) a valid contract; (2) its breach; and
(3) resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (Ariz. 1975). "The
interpretation of a contract is a matter of law and not a question of fact." *Divizio v. Kewin
Enters., Inc.*, 666 P.2d 1085, 1089 (Ariz. Ct. App. 1983). "The terms of the insurance policy
should be given a practical and reasonable construction which support the intent of the
parties." *Stearns-Roger Corp. v. Hartford Accident & Indem. Co.*, 571 P.2d 659, 662 (Ariz.
1977).

### i. The Misappropriated Payments

To the extent that the breach of contract claim is based on Northfield failing to
reissue two coverage payments to Lucky Inn that it had already made, as a matter of law,
there was no breach. By the terms of the Policy, when Northfield covers a loss it will pay
the "Named Insured." (Doc. 73-1 at 9.) The "Named Insured" is Lucky Inn. (*Id.* at 6.) The
allegedly stolen checks were made out to Lucky Inn. (Doc. 73-5 at 4–5.) Abdelaziz was, at

- 6 -

the time he allegedly cashed the checks, a member of Lucky Inn and the person in charge of the hotel. (Docs. 73-3 at 14, 30; 73-14 at 5–6.) Northfield covered the claim in accordance with the Policy.

### ii. Additional Coverage for the Loss

Lucky Inn also claims that Northfield owes it approximately $771,000 in *additional* money to complete the repairs on the Property. (Doc. 74 at 5.) Because of Northfield's delay in making the *original* coverage payments, Lucky Inn asserts it is entitled to additional funds. (*Id.*) Northfield asserts that it has paid Lucky Inn in accordance with the Policy, and therefore, there is no breach and no damages. (Doc. 73 at 5–6.)

Lucky Inn proffers no evidence of a breach of the Policy's property coverage. It does not dispute Northfield's original calculation, which determined the Property's RCV was $771,392.30 at the time of the loss. (Doc. 73-4 at 2.) It does not dispute that the Policy subtracts from the RCV depreciation, the building ordinance or law coverage limit,[3] and the deductible to arrive at the loss payable ($682,377.95). (*See* Doc. 73-1 at 20, 22.) Nor does it dispute that Northfield has paid the entire loss payable.[4] (*See* Docs. 73-5 at 2–9; 75 at 2–3.) As a matter of law, Northfield did not breach the Policy's property damage provisions.

Lucky Inn, instead, seems to believe its entitlement to new money is not a matter of coverage but a matter of consequential damages. Lucky Inn claims that, even if Northfield did not improperly value the Loss, it breached by failing to pay Lucky Inn in a timely manner. (*See* Doc. 74 at 5.) Lucky Inn has not raised a genuine dispute of material fact on consequential damages. First, Ghanem's testimony that she *received* a quote for a complete repair and restoration for $900,000 at the time of loss is inadmissible hearsay, Fed. R. Evid. 801(c), 802, and Lucky Inn has not offered the quote itself as evidence. Even assuming

---

[3] The Policy provides that it will pay up to $10,000 for increased costs of construction but only once those costs have been incurred. (*See* Doc. 73-1 at 15, 24.) Lucky Inn has not proffered evidence that it has incurred these costs.

[4] In its response, Lucky Inn argues that summary judgment is foreclosed because there is no proof of Northfield's October 19 payment. (Doc. 74 at 4.) Northfield clarified that it had omitted the check in error and attached the missing check as an exhibit to its reply. (Doc. 75 at 5; *see* Doc. 1-3 ¶ 34.) The final check resolves the issue: Northfield paid $687,377.95 on the property damage claim.

- 7 -

Ghanem's testimony about the quote is admissible, no reasonable juror could find that the quote proves consequential damages to a reasonable certainty, as required. *See Victory Ins. & Fin. Servs. LLC v. Ben Oberg Enters. LLC*, No. CV-23-08015-PCT-DJH, 2025 WL 661879, at *5 (D. Ariz. Feb. 8, 2025) (quoting *Cnty. of La Paz v. Yakima Compost Co.*, 233 P.3d 1169, 1186 (Ariz. Ct. App. 2010)). The figure has no explanation or calculation behind it. Therefore, the fact dispute isn't genuine. What's more, these damages are not truly "consequential": if the replacement and repair was valued at $900,000 *at the time of loss*, then it is not Northfield's delay that caused the damages. This figure is thus immaterial to the issue of consequential damages.

### iii. Business Income Coverage

Lucky Inn claims that Northfield owes it (1) business income coverage payments and (2) lost profits. The two are similar but distinct types of damages. (*See* Doc. 74 at 7.) The Policy provides that Northfield will provide "business income coverage" to Lucky Inn

> for the actual loss of Business Income [Lucky Inn] sustain[s] due to the necessary "suspension" of [its] "operations" during the "period of restoration". The "suspension" must be caused by direct physical loss of or damage to [the P]roperty . . . and for which a Business Income Limit Of Insurance is shown in the Declarations. The loss or damage must be caused by or result from a Covered Cause of Loss.

(Doc. 73-1 at 26.) Lucky Inn claims that Northfield breached this provision by failing to provide business income coverage beyond October 31, 2022. (Doc. 74 at 6.) It further argues that Lucky Inn is entitled to consequential lost profit damages in excess of the Policy limits. (Doc. 74 at 7.) Northfield asserts that Lucky Inn failed to provide documentation to support business income coverage beyond October 31, 2022 and thus is not entitled to coverage beyond that date. (Doc. 73 at 14.)

There is a genuine dispute of fact as to whether Northfield breached the Policy by failing to provide business income coverage past October 31, 2022. The plain language of the Policy states that business income coverage will be provided while the business is restored because of a covered loss. The Loss here was covered by the Policy. By Northfield's calculation, the loss payable on the Property exceeded $600,000. (Doc. 73-4

at 2.) Thus, Lucky Inn was entitled to business income benefits *at least* until Northfield paid the loss payable on the Property. By October 31, 2022, it had not done so; indeed, it had only paid about $400,000. (Docs. 73-5 at 3–5; 75-1 at 2.)

It follows, then, that Northfield knew Lucky Inn would need further business income coverage. Lucky Inn could not have restored the Property without receiving the insurance benefits that would allow it to do so. But there is no evidence in the record that Northfield sought further information or documentation of Lucky Inn's business income losses. The Policy suggests that Northfield will affirmatively request such information when needed. (*See* Doc. 73-1 at 30 (providing that, in the event of loss, insured must "permit" inspection of the property; fill out necessary forms that Northfield will provide; and "[c]ooperate [with Northfield] in the investigation or settlement of the claim").) Further, Northfield and its forensic accountant requested the necessary information and determined the business income losses in the first instance. (Doc. 73-16 at 2–8.) There is no evidence to suggest Lucky Inn should have known they would not continue to do that.

All things considered, there is a genuine dispute of material fact as to whether Northfield breached the Policy by failing to pay business income coverage beyond October 31, 2022, precluding summary judgment. Having sustained its breach of contract claim, Lucky Inn may seek consequential damages, including lost profits beyond the Policy limits. Ghanem's testimony about Lucky Inn's lost profits is sufficient evidence of consequential damages to withstand summary judgment. "[B]usiness owners and corporate executives have been routinely permitted to testify as lay witnesses based on their personal knowledge of the company and company finances." *Joshua David Mellberg LLC v. Will*, 386 F. Supp. 3d 1098, 1105 (D. Ariz. 2019). Even for a new business, a business owner's lost-profits testimony suffices, so long as the testimony provides a "rational standard" for the damages calculation. *Short v. Riley*, 724 P.2d 1252, 1254–55 (Ariz. Ct. App. 1986) (holding that "when evidence is available to furnish a reasonably certain factual basis for computation of probable losses, recovery cannot be denied even though a new business venture is involved"). Ghanem estimated the lost profits with reasonable certainty, taking the

1   approximate income Lucky Inn would earn if the entire hotel were operating and
2   subtracting what it actually earned when only some of the rooms were operating. (Doc. 73-
3   3 at 25–26.) This is enough that the trier of fact would have a "reasonable basis in the
4   evidence . . . to fix compensation[.]" *Nelson v. Cail*, 583 P.2d 1384, 1387 (Ariz. Ct. App.
5   1978). Lucky Inn's claims for business income coverage and lost profits survive summary
6   judgment.

### iv. Business Personal Property Coverage

Northfield argues that Lucky Inn fails to demonstrate entitlement to BPP benefits beyond what it has already paid ($3,636.43). (Docs. 73 at 6; 73-1 at 10, 22.) Lucky Inn argues that Northfield used the wrong amounts in its calculation of BPP damages and therefore did not provide sufficient coverage. (Doc. 74 at 3–4.) Northfield contends that the RCV of *all* Lucky Inn's BPP was $424,200, while Lucky Inn contends that its BPP *losses alone* were at least $424,200, with a much higher total RCV. (*Compare* Doc. 73 at 7, *with* Doc. 74 at 3.)

There is a material fact dispute here. Northfield based its calculation on information from Ghanem, who estimated furniture, television sets, fridges, microwaves, kettles, and lighting cost about $9,300 per room for forty-four rooms and that "the office" cost around $15,000. (Doc. 73-6 at 2.) Northfield interpreted Ghanem as saying that all Lucky Inn's BPP combined had an RCV of $424,200. But later in that email, Ghanem specifies that the figure did not include "the phone system, AC, cameras, and all the stuff that got damaged" because she had not yet received a quote or an invoice for the RCV of those items. (*Id.*) Northfield took the $424,200 figure as Lucky Inn's entire BPP, and its vendor determined an RCV of $27,243.58 for Lucky Inn's BPP losses. (Doc. 73-15 at 2.) Therefore, the loss payable using the formula provided in the Policy came to around $3,600. (*See* Doc. 73-1 at 10, 22–23.)

Lucky Inn has succeeded in surviving summary judgment on this breach of contract claim. Ghanem's email clearly states that her itemized list does not reflect the entire value of Lucky Inn's BPP, so there is a genuine dispute of material fact as to whether Northfield

used the appropriate RCV in its calculation. Further, Ghanem testified that twenty, fully furnished rooms were damaged in the storm, and the value of BPP in each of those rooms was around $9,000. If true, then Lucky Inn's BPP losses were at least $180,000—over $150,000 more than the vendor's estimate.

Northfield asserts that Lucky Inn (1) failed to provide any documents to "corroborate the amount and value of the items claimed"; (2) included in its calculation BPP losses already accounted for by Northfield; and (3) sought to include Ghanem's personal losses as BPP. (Doc. 75 at 9.) As to the first point, at summary judgment, Ghanem's testimony about the value of Lucky Inn's BPP suffices. Requiring documentation to corroborate her testimony is procedurally inappropriate: the Court does not make credibility judgments or weigh evidence at this stage. *Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1036 (9th Cir. 2005). As to the second point, Northfield may have *accounted* for those losses, but the issue is that it allegedly improperly *valued* them which in turn led to a failure to provide Lucky Inn coverage it deserved. And as to the last point, Ghanem did claim some personal losses which she mistakenly believed to be BPP, testifying that she "lost all [her] cars and [she] lost all [her] teeth and . . . cannot fix it because of th[e Loss]." (Doc. 73-3 at 15.) But this mistake is not fatal to Lucky Inn's claim. Even excluding the personal losses, there is a genuine dispute of fact about whether Northfield properly valued Lucky Inn's total BPP and its true BPP losses.

### c. Lucky Inn fails to demonstrate Northfield had no reasonable basis to delay payments and investigate the claim further, dooming its bad faith claim.

Northfield argues it is entitled to summary judgment because Lucky Inn failed to offer any factual or legal support for its bad faith claim. (Doc. 75 at 10–11.) The implied duty of good faith and affair dealing requires insurance companies to give equal consideration to an insured's interests when it is investigating, evaluating, and processing a claim. *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1136 (Ariz. 1986). "[T]o establish bad faith, 'a plaintiff must show the absence of a reasonable basis for denying

- 11 -

benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim.'" *Deese v. State Farm Mut. Auto. Ins. Co.*, 838 P.2d 1265, 1267–68 (Ariz. 1992) (quoting *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 868 (Ariz. 1981)). It's a question of the insurer's "reasonableness under the circumstances of the case." *Id.* at 1268 (quoting *Sparks v. Republic Nat. Life Ins. Co.*, 647 P.2d 1127, 1136 (Ariz. 1982)). "In applying this standard, . . . it is necessary to determine whether a claim was properly investigated and whether the results of that investigation were reasonably reviewed and evaluated." *Id.* (quoting *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 703, 711 (Ariz. Ct. App. 1985)).

Lucky Inn fails to carry its burden at summary judgment because it "fails to make a showing sufficient to establish the existence of an element essential [its] case, and on which that [it] will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. Lucky Inn has not shown that there was an absence of a reasonable basis for Northfield's actions. This "complete failure of proof concerning an essential element of [its] case" mandates the entry of summary judgment. *Id.* at 323.

In fact, Northfield has shown that it had a reasonable basis to investigate and delay payments: suspicion of fraud. It addressed all checks to the insured, Lucky Inn, but was later informed that the insured did not receive two of them. (Docs. 73-5 at 2–9; 75-1 at 2–3.) In fact, Ghanem told Northfield that Abdelaziz *stole* those checks. (Doc. 73-8 at 2–3.) But Abdelaziz was the Lucky Inn contact and reported the Loss to Northfield. (Docs. 73-20 at 3; 73-21 at 2.) When a Northfield representative requested information to complete a wire transfer, Ghanem asked questions that Northfield expected a representative of the insured would know. (Doc. 73-12 at 6–7.) All these facts together signaled to Northfield that the claim might be fraudulent. (*See id.*) The Policy does not cover losses "in any case involving misrepresentations, omissions, concealment of facts or incorrect statements . . . [t]hat are fraudulent." (Doc. 73-1 at 36.) Northfield thereafter delayed coverage payments to investigate whether the claim was fraudulent—as it is entitled to do under the Policy—to protect both its and Lucky Inn's interests. (*See id.*)

### IV. Conclusion

The Court grants in part and denies in part Northfield's motion for summary judgment. Because there are genuine disputes of fact on the breach of contract claim, the claim can proceed. The bad faith claim fails as a matter of law.

**IT IS ORDERED** that Northfield's motion for summary judgment (Doc. 73.) is **GRANTED** in part and **DENIED** in part as explained herein.

**IT IS FURTHER ORDERED** that the parties shall appear for a telephonic trial scheduling conference on **August 26, 2025, at 10:00 a.m**. Call-in instructions will be provided to the parties via separate email.

Dated this 31st day of July, 2025.

Douglas L. Rayes
Senior United States District Judge